U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 1 1 2017

TONY R. MOORE, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 1:17CR00204 |
| | * | |
| | * | 18 U.S.C. § 1349 |
| | * | 18 U.S.C. § 1343 |
| VERSUS | * | 18 U.S.C. § 2 |
| | * | |
| | * | JUDGE Drell |
| NATHAN BURL CAIN II | * | MAGISTRATE JUDGE Perez-Montes |
| TONIA BANDY CAIN | * | |

## INDICTMENT

THE FEDERAL GRAND JURY CHARGES:

### COUNT 1
### 18 U.S.C. § 1349
### Conspiracy to Commit Wire Fraud

AT ALL TIMES RELEVANT HEREIN:

A,   **BACKGROUND**

1.   The Avoyelles Correctional Center is a prison facility located in Cottonport, Louisiana, operated by the Louisiana Department of Public Safety and Corrections (hereafter "Department of Corrections").

2.   Certain employees of the Avoyelles Correctional Center were issued LaCarte Purchasing Cards (hereafter P-Card) to be used for official Department of Corrections business.

1

3. All persons who participate in the P-Card program, including those who possess and use a P-Card and those who approve purchases on a P-Card, were required to complete an annual online certification class.

4. The use of a P-Card was governed by and subject to State of Louisiana and Department of Corrections policies, rules, and regulations.

5. Department of Corrections regulations expressly stated that P-Cards were to be used for official State business only.

6. All purchases on P-Cards were exempt from state and local sales tax.

7. The use of a P-Card was limited to purchases of five thousand dollars ($5,000) or less per day, unless authorized by the Louisiana Office of State Purchasing and Travel.

8. No purchase or procurement could be artificially divided or structured to avoid the daily P-Card limit of five thousand dollars ($5,000).

9. Department of Corrections regulations expressly prohibited the use of a P-Card by anyone other than the cardholder.

10. Department of Corrections regulations prohibited the use of a P-Card to avoid or circumvent other Department of Corrections procurement or payment policies and procedures.

11. Department of Corrections regulations required that cardholders document every P-Card transaction with receipts and descriptions.

12. In addition to the receipts for each purchase, purchases on a P-Card were required to be documented on a form captioned "Avoyelles Correctional Center RFP Requisition/Receiving Report." Each such report contained, among other

things, an RFP Number with the prefix "GF" and included the name of the cardholder; a listing of the items purchased by item description, quantity, unit cost, and total cost; the purpose of the purchase; and the supervisors/reviewers who approved the purchases.

13. Department of Corrections regulations required that every P-Card transaction be reviewed and approved by a cardholder's immediate supervisor/approver.

14. Department of Corrections regulations required that the supervisor/reviewer ensure, among other things, that each transaction had an appropriate official business purpose.

15. Department of Corrections regulations required that actual or suspected fraud, misuse, or any charges for personal items were to be reported to the Program Administrator.

16. The P-Card was a Visa credit card issued by the Bank of America.

17. When a purchase was made by a Bank of America Visa credit card, a wire communication was sent from the location of the purchase to a place outside of the State of Louisiana.

18. The defendant, NATHAN BURL CAIN II, served as the warden of the Avoyelles Correctional Center.

19. The defendant, TONIA BANDY CAIN, served as the manager of the business office of the Avoyelles Correctional Center. In that position the defendant, TONIA BANDY CAIN, was an approver of P-Card purchases, as well as a P-Card holder.

20. On or about February 22, 2016, TONIA BANDY CAIN transferred from her position as manager of the business office to inmate records. Upon the transfer, TONIA BANDY CAIN was no longer assigned a P-Card.

**B. THE CONSPIRACY**

Beginning on or about December 12, 2012, and continuing until on or about January 29, 2016, in the Western District of Louisiana, and elsewhere, the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, and others known and unknown to the Grand Jury, did knowingly and willfully combine, confederate, and agree together and with others known and unknown to the Grand Jury to commit wire fraud in violation of Title 18, United States Code, Section 1343, namely, to knowingly and willfully devise and intend to devise and participate in a scheme and artifice to defraud the State of Louisiana and the Louisiana Department of Corrections, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**C. THE OBJECT OF THE CONSPIRACY**

It was the object of the conspiracy that the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, would obtain money and property to which they were not entitled, from the State of Louisiana and the Louisiana Department of Corrections.

**D. THE MANNER AND MEANS OF THE CONSPIRACY**

1. It was part of the conspiracy and the scheme to defraud that the defendants used the defendant, TONIA BANDY CAIN's P-Card to purchase items for personal use, while misrepresenting that the items were purchased for official use.

2. It was further part of the conspiracy and the scheme to defraud that the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, would obtain P-Cards assigned to other employees of the Avoyelles Correctional Center and make purchases of personal items at various merchants and online.

3. It was further part of the conspiracy and the scheme to defraud that the defendants, NATHAN BURL CAIN, II and/or TONIA BANDY CAIN, would accompany employees of the Avoyelles Correctional Center to area merchants and instruct the employees to utilize P-Cards to purchase items selected by NATHAN BURL CAIN, II and/or TONIA BANDY CAIN for the defendants' personal use.

4. It was further part of the conspiracy and scheme to defraud that the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, would give employees a "shopping list" of personal items and direct the employees to use P-Cards to make the purchases.

5. It was further part of the conspiracy and the scheme to defraud that if the item or items being purchased cost in excess of five thousand dollars ($5,000), the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, would artificially divide/structure the purchases to hide the fact that the purchase exceeded the P-Card daily limit.

6. It was further part of the conspiracy and the scheme to defraud that purchases for the personal benefit of the defendants, NATHAN BURL CAIN, II and TONIA BANDY CAIN, on P-cards issued to other employees were approved on a corresponding "Avoyelles Correctional Center RFP Requisition/Receiving Report" by

supervisors of the Avoyelles Correction Center, including, in many instances, defendants NATHAN BURL CAIN, II and/or TONIA BANDY CAIN.

7. As warden of the Avoyelles Correctional Center, defendant NATHAN BURL CAIN, II was provided housing on prison grounds. It was further part of the conspiracy and the scheme to defraud that without having obtained the required official Department of Corrections authorization, defendant NATHAN BURL CAIN, II commissioned the construction of a new residence on prison grounds.

8. It was further part of the conspiracy and the scheme to defraud that the construction of the new residence was not put out for bid pursuant to the Louisiana Public Bid Law. Instead, purchases on P-Cards of Avoyelles Correctional Center employees were made on separate occasions for supplies and materials for the construction of the new residence.

**D.  OVERT ACTS**

In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Louisiana and elsewhere:

The United States adopts Counts Two through Eighteen of the Indictment as overt acts of the conspiracy.

All in violation of Title 18 United States Code, Section 1349. [18 U.S.C. § 1349]

## COUNTS 2-18
## 18 U.S.C. §§ 1343, 2
## Wire Fraud

**A.  THE SCHEME AND ARTIFICE TO DEFRAUD**

The allegations in Count 1 are incorporated by reference as though fully set forth herein as the scheme and artifice to defraud.

**B.  THE CHARGES**

On or about the dates listed below, in the Western District of Louisiana and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendants NATHAN BURL CAIN, II and TONIA BANDY CAIN transmitted and caused to be transmitted by means of wire communication in interstate commerce certain signals, as described below:

| Count | Approximate Date | RFP No. | Description |
| --- | --- | --- | --- |
| 2 | January 15, 2014 | GF-41132 | Wire communication in interstate commerce from Grant Tire & Service in Alexandria, Louisiana for credit card purchase. |
| 3 | December 17, 2015 | GF-61217 | Wire communication in interstate commerce from D&J Tire in Bunkie, Louisiana for credit card purchase. |
| 4 | May 29, 2013 | GF-31946 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 5 | August 17, 2013 | GF-40352 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 6 | September 25, 2013 | GF-40567 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |

| 7 | October 13, 2013 | GF-40801 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 8 | May 7, 2014 | GF-41499 | Wire communication in interstate commerce from Walmart in Pineville, Louisiana for credit card purchase. |
| 9 | June 11, 2014 | GF-41704 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 10 | June 27, 2014 | GF-41772 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 11 | May 20, 2015 | GF-51900 | Wire communication in interstate commerce from Walmart, Louisiana in Mansura for credit card purchase |
| 12 | January 5, 2015 | GF-60967 | Wire communication in interstate commerce from Tractor Supply in Mansura, Louisiana for credit card purchase. |
| 13 | September 2, 2015 | GF-60752 | Wire communication in interstate commerce from KNNS Furniture in Hessmer, Louisiana for credit card purchase. |
| 14 | July 8, 2015 | GF-60145 | Wire communication in interstate commerce from KNNS Furniture in Hessmer, Louisiana for credit card purchase. |
| 15 | December 17, 2013 | GF-41016 | Wire communication in interstate commerce from KNNS Furniture in Hessmer, Louisiana for credit card purchase. |
| 16 | September 8, 2015 | GF-60540 | Wire communication in interstate commerce from Walmart in Alexandria, Louisiana for credit card purchase. |
| 17 | May 26, 2015 | GF-51881 | Wire communication in interstate commerce from Robert Lemoine Building in Mansura, Louisiana for credit card purchase. |
| 18 | June 2, 2015 | GF-51917 | Wire communication in interstate commerce from Sequel Electric Supply in Alexandria, Louisiana for credit card purchase. |

in violation of Title 18, United States Code, Sections 1343 and 2 [18 U.S.C. § 1343 & 2].

## FORFEITURE ALLEGATION
18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461

1.  The allegations contained in Counts One through Eighteen of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461.

2.  Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, upon conviction for the offenses alleged in Counts One through Eighteen of the Indictment, the defendants, NATHAN BURL CAIN, II, and TONIA BANDY CAIN, shall forfeit to the United States of America:

    a.  Any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts One through Eighteen of the Indictment, or which represents or is traceable to the gross receipts obtained, directly or indirectly from said violation;

    b.  Any property, real or personal, involved in the offense, and any property traceable to such property.

3.  Property to be forfeited pursuant to paragraph 2(a) and (b) of this Allegation, include, but is not limited to:

    a.  ONE HUNDRED FIFTY-TWO THOUSAND, THREE HUNDRED SIXTY-FOUR DOLLARS, AND SIXTY-NINE CENTS ($152,364.69).

4.  If any of the property subject to forfeiture pursuant to this Count of Forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, to seek forfeiture of any other substitute property of said defendants up to the value of the forfeitable gross receipts, proceeds and property.

A TRUE BILL:

# REDACTED

FOREMAN OF THE GRAND JURY

ALEXANDER C. VAN HOOK
Acting United States Attorney

By: _____
JOHN LUKE WALKER, LA Bar: 18077
Assistant U.S. Attorney

By: _____
DAVID J. AYO, LA Bar: 28868
Assistant U.S. Attorney